NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0731n.06
Filed: October 4, 2006

No. 05-2489

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SETON COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LEAR CORPORATION, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN and DAUGHTREY, Circuit Judges, and REEVES,[*] District Judge.

PER CURIAM. The defendant, Lear Corporation, appeals from two district court rulings, one approving a $30,000,000 jury verdict in favor of the plaintiff, Seton Company, based upon the defendant's anticipatory repudiation of a contract between the parties, and the other assessing Lear an additional $4,725,415.39 in prejudgment interest. Before this court, the defendant raises the same allegations of error addressed by the district judge in orders denying the defendant's motion for judgment notwithstanding the verdict or for a new trial and granting Seton prejudgment interest. Specifically, Lear asserts that any agreement between the parties did not satisfy the requirements of the "merchant exception" to the Michigan Statute of Frauds; that Lear did not unqualifiedly refuse to

---

[*]The Hon. Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

perform under the alleged agreement; that the district court erred in admitting into evidence allegedly improper testimony that Lear maintains prejudiced its position in this litigation; and that the district judge refused to give a requested jury instruction that Lear contends would have prevented jury confusion. The defendant further argues on appeal that Seton cannot properly rely upon the alternative theory of promissory estoppel in order to circumvent the application of the Michigan Statute of Frauds, and that the district court erred in awarding prejudgment interest to the plaintiff for periods of time before Seton actually suffered any financial injury.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to the 1999 introduction of its GMT 800 Program, General Motors Corporation contracted with defendant Lear to provide the automobile manufacturer with leather seats for its trucks and sport utility vehicles. Lear in turn reached an agreement with Seton in October 1998 for the plaintiff to provide Lear with the actual cut-to-pattern leather that went into the seat assemblies. Additionally, Seton agreed to provide Lear with percentage rebates on various shipments of the leather in the expectation that Lear would then pass those savings on to General Motors in fulfillment of Lear's contractual obligations with the automaker. Despite the relative enormity of this commercial undertaking, Seton and Lear initially failed to reduce their agreement with each other to writing. By the fall of 1999, however, the principals who negotiated the Seton-Lear agreement had left their respective positions within their companies. Thus, following a change in the initial rebate practices

that the parties had followed, Lear's new director of purchasing requested that his counterpart at Seton provide him with a written memorialization of the now-modified agreement.

On November 23, 1999, Seton's Ingo Griessmann responded to Lear's request in a one-page correspondence purporting to recap "the agreement reached by Messrs. M. Duross, Director of Purchasing for Lear Corporation and N. Showich, Vice-President of Sales and Marketing for Seton Company" in 1998. In pertinent part, the 1999 confirmation stated that "Lear is to award Seton the entire GMT 800 Program cut to pattern business for the life of the program" in return for various payments and rebates. Even though the letter ended with a request that Lear "[k]indly return with acknowledgement [*sic*] signature," Lear did not do so.

The parties continued to do business with each other in accordance with the terms outlined in the November 23, 1999, letter for two additional years. In late 2001, however, Lear informed Seton that General Motors was planning to use water buffalo hide for the seats on some of its GMT 800 Program vehicles beginning in mid-2002. Although General Motors had actually rejected the water buffalo-hide suggestion and had informed Lear that it would not need such materials from its suppliers, Lear representatives continued to request proposals from Seton for water buffalo hides, proposals that the plaintiff was unable or unwilling to provide. Finally, concerned about the parties' business relationship with each other, Seton sent Lear a letter on January 25, 2002, demanding that the

defendant affirm its commitment to deal exclusively with Seton for its leather needs for the life of the GMT 800 Program. When Lear made clear its position that no life-of-the-program agreement had been reached by the parties, Seton filed suit on January 29, 2002, against the defendant for anticipatory repudiation of the contract.

The suit was originally filed in federal district court in New Jersey, but was then transferred to the Eastern District of Michigan. On April 17, 2002, Seton filed an amended complaint asserting numerous state law causes of action. In response to motions by the defendant, the district judge dismissed many of those claims, but held a jury trial on the plaintiff's assertions of anticipatory repudiation and promissory estoppel. The jury returned a verdict in favor of Seton on the anticipatory repudiation claim, thus rendering unnecessary a further ruling on the promissory estoppel cause of action. The district court denied subsequent motions for judgment notwithstanding the verdict and for a new trial, entered judgment in favor of the plaintiff in the amount of $30,000,000, and awarded Seton prejudgment interest of an additional $4,725,415.39. From those rulings, Lear now appeals.

## DISCUSSION

### A. Judgment Notwithstanding the Verdict

The district court expertly addressed all issues now raised by the defendant on appeal. The court first recognized that the threshold issue in the case involved Seton's

anticipatory repudiation claim: if the plaintiff prevailed on that contract cause of action, the jury had no need to render a verdict on the alternative, promissory estoppel claim. The district judge then concluded that Lear, even if never claiming unequivocally that it would sever its ties with Seton, did clearly breach the alleged agreement between the companies by flatly rejecting the idea that such an agreement extended for the life of the GMT 800 Program. As explained by the district court, "repudiation of an essential part of a contract constitutes repudiation of the contract," and the plaintiff clearly "introduced evidence establishing that the duration of the contract was an essential term."

Lear nevertheless argues that the alleged contract was not enforceable because the Michigan Statute of Frauds requires "a contract for the sale of goods for the price of $1,000.00 or more" to be in writing and to be "signed by the party against whom enforcement is sought." MICH. COMP. LAWS ANN. § 440.2201(1) (2002). The parties do not dispute that no such signed, written memorialization of the agreement between Seton and Lear exists in this case. Under Michigan law, however:

> Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements [of the Statute of Frauds] unless written notice of objection to its contents is given within 10 days after it is received.

MICH. COMP. LAWS ANN. § 440.2201(2) (2002).

Consequently, the attention of the jurors was focused upon two inquiries: first, whether Seton actually produced a "writing in confirmation of the contract"; and second, whether any such writing was sent to Lear "within a reasonable time." The defendant argues that the November 23, 1999, letter from Seton to Lear was not a confirmation of a contract but, rather, an offer to contract. To bolster that argument, Lear now emphasizes language in the letter stating, "We . . . hope that the above meets with your understanding of this agreement." The jury, however, obviously gave more credence to the opening sentence of the letter directing Lear to "please find below the agreement reached by Messrs. M. Duross, Director of Purchasing for Lear Corporation and N. Showich, Vice President of Sales and Marketing for Seton Company."

Similarly, a closer look at the language of the entire November 23 letter reveals the falsity of the defendant's claim that the fact that the correspondence asked for an acknowledgment signature necessarily means that the letter was merely an offer that has not yet been accepted by Lear. As explained by the district judge, "Seton's November 23, 1999 letter did not *require* Lear to take an additional step in order to indicate its acceptance of the letter's terms. Therefore, . . . the Court does not conclude as a matter of law that the letter merely was an offer."

The defendant also contests the timeliness of the letter. Although recognizing that the concept of a "reasonable time" for sending a written confirmation of the agreement "depends on the nature, purpose and circumstances of such action," MICH. COMP. LAWS

ANN. § 440.1204(2), Lear argues that the 13-month period between the making of the alleged contract and the letter is far too lengthy a period to be considered "reasonable." Again, the jury came to a contrary conclusion, possibly because the parties had engaged in congenial business relations with each other without incident for a lengthy period of time after negotiation of the 1998 agreement. Furthermore, a short time prior to issuance of the letter, Lear and Seton modified the terms of their agreement to extend the rebates that the plaintiff paid to the defendant. Even Lear does not argue that the period of time between that subsequent modification and the November 23 letter should be considered unreasonably long as a matter of law.

**B. Motion for New Trial**

The defendant also asserts that the district court erred in failing to order a new trial because of improper evidentiary rulings by the district judge and because of the court's refusal to give a specially-requested jury instruction. To justify such extraordinary relief, the movant must establish that the district judge abused his discretion in the rulings such that the resulting judgment was inconsistent with substantial justice. *See Beck v. Haik*, 377 F.3d 624, 634-35 (6th Cir. 2004). For the reasons detailed by the district court in its denial of the defendant's motion for new trial, however, Lear has failed to satisfy his burden in this regard.

**C. Award of Prejudgment Interest**

Finally, Lear complains about the district court's award to Seton of more than $4.725 million dollars in prejudgment interest. According to the defendant, the district judge erred by calculating the entire award from the date the complaint was filed in federal court, rather than from the date the damages to Seton actually accrued. Lear explains that the initial complaint was filed in district court in New Jersey on January 29, 2002, but that the plaintiff's "lost profits damages did not start to accrue until mid-2002, when production began for the 2003 model year vehicles for which Seton did not supply parts."

Despite the fact that the applicable Michigan statute plainly provides that "interest on a money judgment recovered in a civil action is calculated . . . from the date of filing the complaint . . . ," MICH. COMP. LAWS ANN. § 600.6013(8) (2002), Lear insists that various Michigan state court decisions have recognized exceptions to that rule. In *Perceptron, Inc. v. Sensor Adaptive Machines, Inc.*, 221 F.3d 913, 923 (6th Cir. 2000), however, we took note of, but found inapposite, the numerous Michigan state court decisions that the defendant now cites in support of its position. As we explained in *Perceptron*, the Michigan cases that have reached a result seemingly contrary to the plain wording of the statute refused to award prejudgment interest from the date of the complaint only "[f]or claims that arise after the complaint is filed." *Id.* (citing *Beach v. State Farm Mut. Auto. Ins. Co.*, 550 N.W.2d 580, 586 (Mich. App. 1996)). In *Perceptron*, as in this case, the actual legal wrong (here, the anticipatory repudiation) predated the filing of the federal court action; it was only the quantification of damages that awaited later events. Consequently, we are bound by our earlier decision in *Perceptron*.

## **CONCLUSION**

In two separate opinions, the district judge expertly resolved the various issues presented to him by post-trial motions in this diversity case.  Having now had the benefit of oral argument, and after consideration of the record, the briefs of the parties, and the applicable law, we AFFIRM the judgment of the district court based upon the reasoning more fully expressed by that court in its orders entered on September 27, 2005.